UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DOMINIQUE DESCHAINE, and <br> JUSTIN DESCHAINE, <br>   Individually and on behalf of their <br> MINOR CHILDREN N.D., B.D., T.D., and E.D. <br><br> Plaintiffs, <br><br> v. <br><br> AUBURN HOUSING AUTHORITY, <br> LEAH LANDRY, Individually, and <br> DANIEL JORDAN, Individually, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT**
**(Jury Trial Demanded)**

Plaintiffs Dominique Deschaine and Justin Deschaine, individually and on behalf of their minor children N.D., B.D., T.D., and E.D, complain against Defendants Auburn Housing Authority ("AHA"), Leah Landry (individually), and Daniel Jordan (individually) as follows:

**INTRODUCTION**

This is an action brought by a family of tenants against the AHA regarding the acts and omissions of AHA employees or agents and two individual employees, Leah Landry and Daniel Jordan, for multiple violations of the civil, Constitutional, contractual, and statutory rights of the entire family and for personal injuries sustained by E.D. and T.D. while residing in their public housing rental unit.

## PARTIES, JURISDICTION, and VENUE

1. Plaintiffs Dominique and Justin Deshaine, a married couple, reside together with their four minor children N.B. (age 12), B.D. (age 9), T.D. (age 7), and E.D. (age 6) in Auburn, Maine. B.D. has been diagnosed with Autism.

2. Dominique Deschaine and her four children identify as African American or Black. Mr. Deschaine is Caucasian or White. The Deschaine family identifies as "bi-racial."

3. At all material times relevant to this action, Plaintiffs were eligible for, and received, federal (HUD) public housing benefits administered through the AHA. More specifically, they are tenants at 702 Broadview Ave. in Auburn, a residential apartment unit owned by the City of Auburn and managed by the AHA.

4. Defendant AHA is a municipal "housing authority" as that term is defined under Title 30-A Chapter 201 of the Maine Revised Statutes.[1]

5. At all times relevant to the allegations in this complaint, Defendant Leah Landry was employed by the AHA as an Assistant Property Manager and acted under the color of state law.

6. At all times relevant to the allegations in this complaint, Defendant Daniel Jordan was employed by the AHA as a Maintenance Mechanic and acted under the color of state law.

7. Jurisdiction is proper under 28 U.S.C. § 1331 (Federal Question).

---

[1] 30-A M.R.S. § 4721 addresses the creation of a municipal housing authority; 30-A M.R.S. § 4741 sets forth the vested powers, which includes the power to sue or be sued.

8. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Maine. Under Rule 3(b) of the Rules of this Court, this action is properly filed in Portland because Defendant's principal place of business is in Androscoggin County and Plaintiffs resided in Androscoggin County during the period of time in which the events at issue occurred.

9. With respect to Counts I and II, Plaintiffs have exhausted all necessary administrative remedies under the Maine Human Rights Act ("MHRA") and have otherwise met all conditions before commencing suit on this matter.

## JURY TRIAL DEMAND

10. Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury.

## FACTUAL ALLEGATIONS

11. In April 2022, Ms. Deschaine noticed a number of problems with the plumbing and infrastructure of her apartment, including leaking pipes, damage to her floors, the presence of mold and mildew, poor air quality, and strong odors.

12. Between April 2022 and June 2022, Ms. Deschaine called AHA over 20 times to report unsafe dwelling conditions, including water damage and mold.

13. AHA ignored her.

14. The water damage and leaky pipes became worse over the course of April, May, and June of 2022. As a result, the mold became much worse.

15. On June 21, 2022, in response to Ms. Deschaine's reports and complaints of unsafe dwelling conditions and AHA's failure to address or respond to

her complaints, Defendant Leah Landry stated to Ms. Deschaine "you should stay calm because *people like you* get angry and then you look like you're the problem."

16.  While the water damage and mold originated in Plaintiffs' apartment, it soon spread to nearby apartments occupied by White/Caucasian tenants.

17.  It was not until Ms. Deschaine asked one of her White neighbors to contact the maintenance department that AHA arrived to inspect the damage.

18.  Based on the call from Ms. Deschaine's White neighbor, AHA maintenance technicians responded and went to the White neighbor's apartment to inspect that apartment.

19.  Only when the technicians discovered that the water damage and mold originated in the Deschaine apartment did they inspect the Deschaine apartment.

20.  On June 29 and June 30, 2022, AHA maintenance technicians, one of whom was Defendant Daniel Jordan, went to the Deschaine apartment to inspect the premises. Mr. Jordan or another technician discovered a leak in the hot water pipe along with the presence of mold and serious damage to the flooring. Ms. Deschaine repeated her concerns about the seriousness of the water and mold problems and AHA's failure to inspect or address the problems for over two months.

21.  In response to Ms. Deschaine's complaints and concerns, Mr. Jordan told Ms. Deschaine to "shut up" and asked "why don't you just move?" if she was unhappy and didn't like the living conditions in her apartment.

22.  As Mr. Jordan got into his truck, he said to Ms. Deschaine: "***SHUT THE F**K UP, YOU BLACK BITCH***."

23. Ms. Deschaine was very upset by Mr. Jordan's comments. She told her neighbor about Mr. Jordan's racist comment almost immediately.

24. Ms. Deschaine's neighbor has confirmed that ***she heard*** Mr. Jordan making the comment.

25. On July 14, 2022, AHA informed Plaintiffs that there were elevated levels of mold in their apartment, and, due to the unsafe living conditions, Plaintiffs were forced to move to a local hotel on July 20, 2022.

26. Plaintiffs were displaced from July 20, 2022 to March 20, 2023.

27. Due to exposure to poor air quality and mold, two of Plaintiffs' children (T.D. and E.D.) experienced health problems and sustained personal injuries.

28. As a result of the displacement and unsafe living conditions, E.D. and T.D. experienced problems breathing, were frequently sick or uncomfortable, fought infections, and endured pain and suffering; T.D. sought treatment for problems with her ear, nose, and throat; and B.D.'s emotional state significantly worsened.

29. Laboratory tests confirmed that E.D. had elevated levels of mold, fungi, and toxins, for which he received medical treatment.

30. The children's health problems and personal injuries were caused by unsafe living conditions and displacement.

31. Due to the presence of mold and other unsafe living conditions, Plaintiffs sustained thousands of dollars of damages to their personal property.

32. Ms. Deschaine reported to AHA Ms. Landry's and Mr. Jordan's racist comments and the disparate treatment to which they were subjected.

33. AHA ignored or minimized Ms. Deschaine's complaints.

34. Since July 20, 2022, AHA has alleged, without basis, that the Deschaine family was in violation of AHA's policies and procedures, including the provisions of the applicable lease agreement and income verification requirements.

35. AHA has refused to reimburse the family for their personal property damages or the costs of health care or other costs associated with their displacement, property damages, or personal injuries.

36. On or about August 8, 2022, Plaintiff Dominique Deschaine filed a complaint of discrimination in housing with the Maine Human Rights Commission ("MHRC") on behalf of herself and her four minor children. Plaintiffs' complaint was dual-filed with the U.S. Department of Housing and Urban Development ("HUD").

37. On or about May 26, 2023, MHRC notified Plaintiffs of their right to file a civil action, and, due to the dual-filing with HUD, MHRC is obligated to file suit against Respondent on behalf of the public interest.[2]

### Count I
### 5 M.R.S. § 4581-A (Maine Human Rights Act)
### Race Discrimination in Housing
### Plaintiffs Dominique Deschaine and Minor Children vs. All Defendants

38. Plaintiffs repeat the allegations contained in Paragraphs 1 through 37.

39. The MHRA, 5 M.R.S. § 4581-A, prohibits any person from discriminating against any person because of race or color and/or because of their familial status, in the terms, conditions, or privileges of rental housing.

---

[2] Plaintiffs have notified MHRC of the filing of this action, but have no knowledge of MHRC's intentions with respect to filing its own civil action or joining this action.

40. Defendants Jordan and Landry engaged in discriminatory conduct while performing duties assigned to them by AHA and/or while engaged in a course of conduct subject to AHA's control. Defendant AHA is therefore liable for the acts and omissions of Defendants Jordan and Landry as well as other employees, agents, supervisors, managers, and management personnel.

41. As set forth above, Defendants discriminated against Plaintiffs because of their race, color, and/or bi-racial familial status, to wit: the discrimination, hostility, and other disparate treatment to which they were subjected affected the terms, conditions, or privileges of their rental housing.

42. Defendants subjected Plaintiffs to a hostile housing environment because of their race, color, and/or bi-racial familial status. Such harassment was sufficiently severe or pervasive so as to alter the conditions of Plaintiffs' housing and create an abusive and hostile housing environment. Defendants' conduct was both objectively and subjectively offensive, such that a reasonable person or persons would find it hostile or abusive, and Plaintiffs in fact did perceive it to be so.

43. For example, Defendant Landry's comment that Plaintiffs "should stay calm because people like you get angry and look like you're the problem" and Defendant Jordan's statement that Ms. Deschaine should "shut up" and reference to her as a "black bitch" were offensive and laced with racial animus and stereotypes.

44. By way of further example, Defendants' failure to timely respond to Ms. Deschaine's repeated complaints about unsafe living conditions was motivated in whole or in part by Plaintiffs' race, color, and/or bi-racial familial status.

Defendants' failure to respond to Plaintiffs and/or inspect or remediate the water damage and mold problems was motivated in whole or in part by Plaintiffs' race, color, and/or bi-racial familial status and led to adverse actions and consequences for Plaintiffs, including significant damage to the rental unit, the creation of uninhabitable living conditions, personal property damages and economic loss, personal injury, forced relocation, and severe emotional distress.

45. As set forth above, Defendants Landry and Jordan unlawfully coerced, intimidated, or interfered with Plaintiffs' right to be free from race discrimination in violation of the MHRA, and, as such, are individually liable under the MHRA.

46. As a direct and proximate result of Defendants' actions as set forth herein, Plaintiffs suffered damages in an amount to be proven at trial.

## Count II
### 5 M.R.S. § 4633 (Maine Human Rights Act)
### Prohibition Against Retaliation and Interference
### Plaintiffs Dominique Deschaine and Minor Children vs. All Defendants

47. Plaintiffs repeat the allegations contained in Paragraphs 1 through 46.

48. The MHRA, 5 M.R.S. § 4633, prohibits any person from discriminating against any individual because that individual has opposed any act or practice that is unlawful under the MHRA or because that person has made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the Act.

49. Section 4633 further declares it unlawful for any person to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted or protected under the MHRA because that individual has exercised or enjoyed, or aided or encouraged others in the exercise of such rights.

8

50. As set forth above, Defendants retaliated against Plaintiffs because they opposed Defendants' discriminatory acts or practices, because Plaintiffs exercised their rights to be free from discrimination in housing, and/or because Plaintiffs made a charge end participated in an investigation under the MHRA.

51. As set forth above, Defendants unlawfully coerced, intimidated, threatened and interfered with Plaintiffs' rights to be free from discrimination in housing and/or because Plaintiffs made a charge end participated in an investigation under the MHRA.

52. Defendants Jordan and Landry engaged in discriminatory conduct while performing duties assigned to them by AHA and/or while engaged in a course of conduct subject to AHA's control. Defendant AHA is therefore liable for the acts and omissions of Defendants Jordan and Landry as well as other employees, agents, supervisors, managers, and management personnel.

53. Section 4633 of the MHRA applies against individuals in their individual capacity. Defendants Jordan and Landry are individually liable for their discriminatory and retaliatory acts as well as for coercion, intimidation, threats, and interference with Plaintiffs' rights.

54. As a direct and proximate result of Defendants' actions as set forth herein, Plaintiffs suffered damages in an amount to be proven at trial.

### Count III
### 42 U.S.C. § 3604 (Fair Housing Act/Title VIII Civil Rights Act of 1964)
### Race Discrimination in Housing
### All Plaintiffs vs. All Defendants

55. Plaintiffs repeat the allegations contained in Paragraphs 1 through 54.

56. Title VIII of the Civil Rights Act of 1964, otherwise known as the Fair Housing Act, 42 U.S.C. § 3604 ("FHA"), prohibits any person from discriminating against any person because of race, color, and/or their familial status, in the terms, conditions, or privileges of rental housing.

57. As set forth above, Defendants discriminated against Plaintiffs because of their race, color, and/or bi-racial familial status, to wit: the discrimination, hostility, and other disparate treatment to which they were subjected affected the terms, conditions, or privileges of their rental housing.

58. Defendants subjected Plaintiffs to a hostile housing environment because of their race, color, and/or bi-racial familial status. Such harassment was sufficiently severe or pervasive so as to alter the conditions of Plaintiffs' housing and create an abusive and hostile housing environment. Defendants' conduct was both objectively and subjectively offensive, such that a reasonable person or persons would find it hostile or abusive, and Plaintiffs in fact did perceive it to be so.

59. Defendants Jordan and Landry engaged in discriminatory conduct while performing duties assigned to them by AHA and/or while engaged in a course of conduct subject to AHA's control. Defendant AHA is therefore liable for the acts and omissions of Defendants Jordan and Landry as well as other employees, agents, supervisors, managers, and management personnel.

60. Section 3604 applies against individuals in their individual capacity. Defendants Jordan and Landry are individually liable for their discriminatory acts.

61. As set forth above, Defendants Landry and Jordan unlawfully coerced, intimidated, or interfered with Plaintiffs' right to be free from race discrimination in violation of § 3604, and, as such, are individually liable under § 3604.

62. As a direct and proximate result of Defendants' actions as set forth herein, Plaintiffs suffered damages in an amount to be proven at trial.

**<u>Count IV</u>**
**42 U.S.C. § 2000d (Title VI Civil Rights Act of 1964)**
**Race Discrimination in Housing**
**All Plaintiffs vs. Defendant Auburn Housing Authority**

63. Plaintiffs repeat the allegations contained in Paragraphs 1 through 62.

64. Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d states that "no person…shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

65. Defendant AHA receives Federal financial assistance to assist with the maintenance or operations of providing public rental housing.

66. As set forth above, Defendant AHA discriminated against Plaintiffs because of their race, color, and/or bi-racial familial status, to wit: the discrimination, hostility, and other disparate treatment to which Plaintiffs were subjected affected the terms, conditions, or privileges of their rental housing, and resulted in their exclusion from participation in, and denial of, public benefits.

67. Defendant AHA subjected Plaintiffs to a hostile housing environment because of their race, color, and/or bi-racial familial status. Such harassment was sufficiently severe or pervasive so as to alter the conditions of Plaintiffs' housing

and create an abusive and hostile housing environment. Defendant AHA's conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive, and Plaintiff in fact did perceive it to be so.

68. Defendants Jordan and Landry engaged in discriminatory conduct while performing duties assigned to them by AHA and/or while engaged in a course of conduct subject to AHA's control. Defendant AHA is therefore liable for the acts and omissions of Defendants Jordan and Landry as well as other employees, agents, supervisors, managers, and management personnel.

69. As a direct and proximate result of Defendant AHA's actions as set forth herein, Plaintiffs suffered damages in an amount to be proven at trial.

## Count V
### 42 U.S.C. § 1981 (Civil Rights Act of 1866)
### Race Discrimination
### All Plaintiffs vs. All Defendants

70. Plaintiffs repeat the allegations contained in Paragraphs 1 through 69.

71. Section 1981 of Title 42 of the U.S. Code ("Section 1981") provides that all persons shall have the same rights as white citizens to "make and enforce contracts" including the right to enjoy all terms and conditions of employment in a manner free from racial discrimination or harassment.

72. Plaintiffs were parties to a contractual lease agreement with AHA.

73. As set forth above, Defendants intentionally deprived Plaintiffs of the same rights as are enjoyed by White citizens to the creation, performance, and enjoyment of all benefits and privileges of (contractual) public rental housing, and, as a result of Defendants' actions, Plaintiffs' contractual rights were impaired.

74. As set forth above, Defendants discriminated against Plaintiffs because of their race, color, and/or bi-racial familial status, to wit: the discrimination, hostility, and other disparate treatment to which Plaintiffs were subjected affected the terms, conditions, or privileges of their contractual rental housing agreement with AHA, and resulted in their exclusion from participation in, and denial of, public benefits.

75. Defendants subjected Plaintiffs to a hostile housing environment because of their race, color, and/or bi-racial familial status. Such harassment was sufficiently severe or pervasive so as to alter the conditions of Plaintiffs' housing and create an abusive and hostile housing environment. Defendants' conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive, and Plaintiff in fact did perceive it to be so.

76. Defendants Jordan and Landry engaged in discriminatory conduct while performing duties assigned to them by AHA and/or while engaged in a course of conduct subject to AHA's control. Defendant AHA is therefore liable for the acts and omissions of Defendants Jordan and Landry as well as other employees, agents, supervisors, managers, and management personnel.

77. Section 1981 applies against individuals in their individual capacity. Defendants Jordan and Landry are individually liable for their discriminatory acts.

78. As set forth above, Defendants Landry and Jordan unlawfully coerced, intimidated, or interfered with Plaintiffs' right to be free from race discrimination in violation of § 1981, and, as such, are individually liable under § 1981.

79. Through the intentional discriminatory actions as alleged above, Defendants have acted with malice or reckless indifference to the rights of Plaintiffs, thereby entitling them to punitive damages to be determined by a jury.

80. As a direct and proximate result of Defendants' actions as set forth herein, Plaintiffs suffered damages in an amount to be proven at trial.

**Count VI
42 U.S.C. § 1983 (Fourteenth Amendment)
Violation of Equal Protection Rights/Failure to Train
All Plaintiffs vs. Defendant Auburn Housing Authority**

81. Plaintiffs repeat the allegations contained in Paragraphs 1 through 80.

82. Section 1983 of Title 42 prohibits a person acting under color of state law from depriving any other person of any rights, privileges or immunities secured by the United States Constitution.

83. The Fourteenth Amendment of the United States Constitution provides, in pertinent part, that a state actor may not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws".

84. As set forth above, and with respect to the allegations in this Count, Defendant AHA deprived Plaintiffs of their Constitutional rights to equal protection of the laws by, among other acts and omissions, its (i) failure to follow, apply, comply with, or enforce anti-discrimination, retaliation, and harassment laws, policies, procedures, customs, or practices, and (ii) failure to adequately train or supervise employees or agents about their obligation to properly investigate and address incidents anti-discrimination, retaliation, and harassment in public housing.

85. AHA's failure to follow, apply, or enforce laws, policies, procedures, customs, or practices and its failure to adequately train or supervise its employees amounts to deliberate indifference to the rights of Plaintiffs and to foreseeable harms caused therefrom.

86. As a direct and proximate result of AHA's acts and omissions, Plaintiffs have suffered damages in an amount to be determined at trial, plus costs and attorney's fees.

### Count VII
### 42 U.S.C. § 1983 (Fourteenth Amendment)
### Violation of Equal Protection Rights
### All Plaintiffs vs. Defendants Landry and Jordan

87. Plaintiffs repeat the allegations contained in Paragraphs 1 through 86.

88. Title 42 U.S.C. § 1983 provides a cause of action against any person who, acting under the color of law, deprives an individual of any rights, privileges, or immunities secured by the Constitution and the laws of the United States.

89. The Fourteenth Amendment to the United States Constitution states, in pertinent part, that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States…nor deny to any person within its jurisdiction the equal protection of the laws.

90. As set forth above, and with respect to the allegations in this Count, Defendants Landry and Jordan acted at all times under the color of state law.

91. Defendants Landry and Jordan intentionally deprived Plaintiffs of the same rights as are enjoyed by White citizens to the creation, performance, and enjoyment of all benefits and privileges and privileges of their public rental housing.

92. Defendants Landry and Jordan discriminated against Plaintiffs because of their race, color, and/or bi-racial familial status, to wit: the discrimination, hostility, and other disparate treatment to which Plaintiffs were subjected affected the terms, conditions, or privileges of their contractual rental housing agreement with Defendant AHA, and resulted in their exclusion from participation in, and denial of, public benefits.

93. Defendants Landry and Jordan subjected Plaintiffs to a hostile housing environment because of their race, color, and/or bi-racial familial status. Such harassment was sufficiently severe or pervasive so as to alter the conditions of Plaintiffs' housing and create an abusive and hostile housing environment. Their conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive, and Plaintiffs in fact did perceive it to be so.

94. Through the intentional discriminatory actions as alleged above, Defendants Landry and Jordan have acted with malice or reckless indifference to the rights of Plaintiffs, thereby entitling them to an award of punitive damages to be determined by a jury.

95. As a direct and proximate result of Landry's and Jordan's actions as set forth herein, Plaintiffs suffered damages in an amount to be proven at trial.

### Count VIII
**14 M.R.S. § 6021**
**Violation of Implied Warranty and Covenant of Habitability**
**All Plaintiffs vs. Defendant Auburn Housing Authority**

96. Plaintiffs repeat the allegations contained in Paragraphs 1 through 95.

97. Section 6021 of Title 5 of the Maine Revised Statutes provides that "in any written or oral agreement for rental of a dwelling unit, the landlord is deemed to covenant and warrant that the dwelling unit is fit for human habitation."

98. Plaintiffs and Defendant AHA were parties to a lease agreement for rental housing. The AHA was Plaintiffs' "landlord" as that term is defined and applied under 5 M.R.S. § 6021.

99. The living conditions at 702 Broadview Ave. in Auburn from April 1, 2022 through March 30, 2023, as set forth above, endangered or materially impaired the health and safety of Plaintiffs, and, as such, were uninhabitable.

100. Such conditions were not caused by Plaintiffs or anyone acting under their direction or control.

101. On several occasions prior to filing suit, Plaintiffs provided notice of such uninhabitable living conditions to the AHA or agents on their behalf.

102. Defendants unreasonably failed under the circumstances to take prompt, effective steps to repair or remedy the conditions.

103. Plaintiffs were current on rent payments when such notice was provided to Defendants.

104. As set forth above, Defendant AHA violated the Implied Warranty and Covenant of Habitability and breached their obligation to Plaintiffs to provide them with reasonably safe and healthy conditions fit for human habitation.

105. The uninhabitable living conditions to which Plaintiffs were subjected directly and proximately caused damages in an amount to be proven at trial.

### Count IX
### Common Law Breach of Contract
### All Plaintiffs vs. Defendant Auburn Housing Authority

106. Plaintiffs repeat the allegations contained in Paragraphs 1 through 105.

107. Plaintiffs and Defendant AHA were parties to a valid and enforceable contract, to wit: a lease agreement for 702 Broadview Ave. in Auburn.

108. As set forth above, Defendant AHA breached the material terms and conditions of Section 7 of the Lease Agreement, including but not limited to the AHA's obligations to (a) maintain the premises in decent, safe, and sanitary conditions; (b) comply with applicable housing, building, or HUD codes or regulations affecting tenant health and safety; (c) to make necessary repairs to the premises; (d) to keep buildings, facilities, and common areas in clean and safe condition; and (g) to maintain in good an safe working order and condition electrical, plumbing, sanitary, [HVAC], and other facilities.

109. Defendant's breach directly and proximately caused Plaintiffs to sustain damages in an amount to be proven at trial.

### Count X
### Common Law Negligence
### All Plaintiffs vs. Defendant Auburn Housing Authority

110. Plaintiffs repeat the allegations contained in Paragraphs 1 through 109.

111. Under Maine law, 14 M.R.S. § 8104-A, a governmental entity such as the Auburn Housing Authority is liable for its negligent acts or omissions in the construction, operation or maintenance of any public building or the appurtenances to any public building.

112. Defendant AHA owed Plaintiffs a duty of reasonable care to provide reasonably safe and healthy living conditions and to properly construct, maintain, or operate a public building such as 702 Broadview Ave. in Auburn.

113. Defendant AHA breached its duty of care owed to Plaintiffs.

114. As a direct and proximate result of Defendant's negligence, Plaintiffs sustained damages in an amount to be proven at trial.

### Count XI
### Common Law Intentional Infliction of Emotional Distress
### All Plaintiffs vs. Defendants Landry and Jordan

115. Plaintiffs repeat the allegations contained in Paragraphs 1 through 114.

116. As set forth above, Defendants Landry's and Jordan's conduct was intentional, extreme and outrageous, exceeded all possible bounds of decency, and must be regarded as atrocious and utterly intolerable in a civilized community.

117. Defendants Landry and Jordan intentionally or recklessly caused severe emotional distress to Plaintiffs or were certain or substantially certain that such distress would result from their conduct.

118. As a direct and proximate result of Defendants Landry's and Jordan's conduct, Plaintiffs sustained damages, including but not limited to severe emotional distress, such that no reasonable person could be expected to endure it, in an amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter judgment in Plaintiffs' favor on all counts;

B. For Counts I and II, award Plaintiffs civil penal damages as authorized by 5 M.R.S. § 4613(2)(B)(7); their actual damages as authorized by 5 M.R.S. § 4613(2)(B)(9); and punitive damages against Defendants Landry and Jordan as authorized by 5 M.R.S. § 4613(2)(B)(9);

C. For all counts except Count III, award Plaintiffs compensatory damages, as determined by the factfinder, for pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, plus pre-judgement and post-judgment interest;

D. For Count III, award Plaintiffs non-emotional distress compensatory damages, as determined by the factfinder, plus pre-judgement and post-judgment interest;

E. For all counts, award Plaintiffs consequential damages, as determined by the factfinder;

F. For all counts against Defendants Landry and Jordan, award Plaintiffs punitive damages, as determined by the factfinder, for their intentional, discriminatory, malicious, and/or reckless conduct;

G. Award Plaintiffs their costs of suit, including reasonable attorneys' fees and other litigation costs incurred in bringing this action pursuant to applicable statutory fee-shifting provisions and as deemed just and proper by this Court; and

H. Grant Plaintiffs such further relief as the Court may deem just and proper.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL CLAIMS IN THEIR COMPLAINT WHICH ARE SO TRIABLE AS OF RIGHT.**

Dated:  November 21, 2023          */s/ James A. Clifford*
                                    James A. Clifford
                                    james@cliffordclifford.com
                                    */s/ Andrew P. Cotter*
                                    Andrew P. Cotter
                                    andrew@cliffordclifford.com

CLIFFORD & CLIFFORD, LLC
10 Moulton Street, 5th Floor
Portland, ME 04101
(207) 613-9465